**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **RAMON M.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-18-2025** |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| | ) | |
| **Acting Commissioner, Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

# MEMORANDUM OPINION

Ramon M. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 11, and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"), ECF No. 15. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** the Administrative Law Judge's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On June 2, 2015, Plaintiff filed for DIB under Title II. R. 16, 60–68. Plaintiff alleged disability beginning June 15, 2011. R. 16, 60. Plaintiff alleged disability due to "diabetes, vertigo, brain tumor, no pain sensation on the left side of [] body, no hot or cold sensation on the left side of [] body." R. 60, 70. Plaintiff's claim was initially denied on September 22, 2015, and upon reconsideration on January 27, 2016. R. 16, 60–68, 70–82, 84–86, 93–94. On February 1, 2016, Plaintiff requested an administrative hearing. R. 16. A hearing was held on June 27, 2017, at which time Plaintiff, "through his representative," amended the date of the onset of his alleged disability to January 1, 2014. R. 16, 223. On August 10, 2017, Plaintiff's claim was denied. R. 28. Plaintiff sought review by the Appeals Council, which concluded on May 12, 2018, that there was no basis for granting the Request for Review. R. 1–7, 195–96.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164.

"It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is “doing substantial gainful activity.” 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a “severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement.” 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that “meets or equals one of [the C.F.R.’s] listings in appendix 1 of this subpart and meets the duration requirement.” 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the “residual functional capacity” (“RFC”) to perform “past relevant work.” 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a “regular and continuing basis.” 20 C.F.R. § 404.1545(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant’s impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a “narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations),” and must then “explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.” SSR 96-8p, 1996 WL 374184 at *7

(S.S.A. July 2, 1996). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

**III. Analysis**

In this matter, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 16–28. At step one, the ALJ determined that Plaintiff did not engaged in substantial gainful activity since June 15, 2011, the alleged onset date of Plaintiff's disability prior to Plaintiff amending it at the hearing. R. 16, 18. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff had the following severe impairments: "history of cerebral menigionma, obesity and obstructive sleep apnea." R. 19. The ALJ stated that these impairments were severe because they, "cause[d] more than a minimal effect on [Plaintiff's] ability to perform basic work activities . . . ." R. 19. The ALJ also noted that Plaintiff suffered from several other medically determinable impairments but deemed them to be "non-severe" because "they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations." R. 19. In step three, the ALJ determined that Plaintiff did not have "an impairment or a combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." R. 21. At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that:

> [Plaintiff] is limited in the workplace to lifting up to 20 pounds occasionally[1] and 10 pounds frequently,[2] standing and walking for about six hours, and sitting for up to six hours in an eight-hour workday with normal breaks. He is limited to no

---

[1] In his decision, the ALJ defined "occasionally" as "one-third of an eight-hour workday." R. 22 n.1.

[2] In his decision, the ALJ defined "frequently" as "two-thirds of an eight-hour day." R. 23 n.2.

> climbing of ladders, ropes, or scaffolds. [Plaintiff] is limited to occasionally climbing of ramps or stairs, occasional balancing, frequent stooping, frequent kneeling, frequent crouching, and frequent crawling.

R. 22–23. The ALJ then determined that Plaintiff was capable of performing his past relevant work as an "Operations Supervisor and Instructor." R. 26. In coming to this conclusion, the ALJ relied upon the testimony of a vocational expert ("VE") and found that Plaintiff's past work "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." R. 26–27. Despite this finding, the ALJ went on to make "alternative findings for step five of the sequential evaluation process." R. 27. With the help of testimony from the VE, the ALJ also concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." R. 27–28. Accordingly, Plaintiff's claim for DIB was denied. R. 28.

On appeal, Plaintiff requests that the Court grant summary judgment in his favor or, in the alternative, remand this matter to the Social Security Administration ("SSA") for a new administrative hearing. Pl.'s Mem. 12–13. For the reasons set forth below, the Court **REVERSES** the ALJ's decision in part and **REMANDS** the matter for further proceedings.

### *A. The ALJ erred in his assessment of the weight to afford Plaintiff's VA disability rating.*

Plaintiff argues that the ALJ failed to support with sufficient evidence his decision to assign "little weight" to the VA determination that Plaintiff is "permanently and totally disabled." Pl.'s Mem. 8–9. Commissioner counters that the ALJ provided sufficient reasoning for his decision by citing the fact that the VA utilizes a different standard than the SSA when assessing disability. Comm'r's Mem. 5–6. Commissioner asserts that, because the ALJ went on to make his own evaluation of Plaintiff's claim of disability and based it upon the complete record, that the ALJ sufficiently explained his decision to give the VA determination little weight. *Id.* at 6.

In *Bird*, the Fourth Circuit held that, "in making a disability determination, the SSA must give substantial weight to a VA disability rating." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012). This was due to the fact that both agencies "serve the same government purpose of providing benefits to persons unable to work because of serious disability." *Id.* The Fourth Circuit also noted similarities in each agency's evaluation process. *Id.* As a result, the court in *Bird* found "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* However, the Fourth Circuit also held that an ALJ may assign less weight where the record "clearly demonstrates that such a deviation is appropriate." *Id.*; *see also Green v. Berryhill*, Civ. No. TMD 15-3467, 2017 WL 1048155, at *9 (D. Md. Mar. 20, 2017) (noting that "the ALJ gave several reasons for discounting the weight given to the VA disability rating"). This was the result of the Fourth Circuit's acknowledgement that variations exist between each administrative agency's determination of disability as each "employs its own standards for evaluating a claimant's alleged disability" and "the effective date of coverage for a claimant's disability under the two programs likely will vary." *Bird*, 699 F. 3d at 343.

Since *Bird*, it is clear an ALJ cannot disregard a VA disability rating. *See, e.g.*, *Lamb v. Comm'r, Soc. Sec.*, Civ. No. GLR-14-0886, 2014 WL 5704905, at *2 (D. Md. Nov. 4, 2014) (holding remand was necessary where the ALJ failed to provide any analysis of the VA disability rating). Further, an ALJ cannot simply state that the record supports his assertions; he must "provide 'persuasive, specific and valid reasons' for giving less weight to the VA's disability rating that are supported by the record." *Mims v. Berryhill*, Civ. No. TMD 16-2813, 2017 WL 3704615, at *8 (D. Md. Aug. 28, 2017) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076

[9th Cir. 2002]). The Fourth Circuit has even clarified that the ALJ is expected to offer more than a summary dismissal of another agency's disability determinations.

> For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after [the prior agency] issued its decision. This list is not exclusive, but the point of this requirement—and of these examples—is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review.

*Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see, e.g.*, *Griffin v. Comm'r, Soc. Sec. Admin.*, No. Civ. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) (finding an ALJ "adequately explained" why he assigned "little weight" to a VA disability rating of 70 percent where he noted "[the claimant] performed substantial gainful employment for several years despite that rating, and was able to apply for and obtain new positions").

Here, the ALJ's rationale fails to meet the requirements of *Bird*. In his decision, the ALJ afforded "little weight" to the VA's determination that Plaintiff was "permanently and totally disabled." R. 26. To support this decision, the ALJ cited the fact that "the disability determination processes utilized by the [VA] and the [SSA] are fundamentally different." *Id.* The ALJ concluded that these differences meant "a disability finding by the [VA] is of little probative value" and furthermore "not binding on this proceeding." *Id.* While the Fourth Circuit in *Bird* acknowledged that the different standards for each agency might provide reasons supporting an ALJ's decision to afford a finding of disability less weight, subsequent cases have clarified that merely stating this fact is not a "persuasive, specific, or valid reason" supported by evidence in the record. *Woods*, 888 F.3d at 692 (quotation marks omitted) (citation omitted); *see, e.g.*, *Smith v. Berryhill*, Civ. A. No. CBD-18-0381, 2018 WL 6249692, at *4 (D. Md. Nov. 29, 2018) (holding the ALJ's reasoning that "the standards utilized for other types of disability

claims differ from the standards imposed by Social Security statues, regulations, and rules" was insufficient to support assigning little weight to a VA's disability determination); *Stanley v. Berryhill*, No. 1:17CV913, 2019 WL 919355, at *5 (M.D.N.C. Feb. 25, 2019) (holding the ALJ failed to meet the requirements in *Bird* where "the ALJ's rationale [for assigning little weight to the VA determination] relies only on the differences between the VA and SSA disability systems, without making any particular findings as to Plaintiff's case"). Furthermore, the ALJ's view that the VA's determination has "no probative value in these proceedings," R. 26, is in direct contradiction to the findings of the Fourth Circuit. *See Woods*, 888 F.3d at 692 (citing *Bird*, 699 F.3d at 343) (reaffirming that "'the purpose and evaluation methodology of' the SSA and VA disability determinations are 'closely related'" and concluding that "'a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency'").

The Commissioner argues that the ALJ's evaluation as a whole supports his decision to assign little weight to the VA's determination. Comm'r Mem. 6. However, as the Fourth Circuit made clear in *Woods*, "the ALJ must adequately explain his reasoning; otherwise, [courts] cannot engage in a meaningful review." *Woods*, 888 F.3d at 693 (citing *Radford*, 734 F.3d at 295); *see also Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) ("Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."). Therefore, absent additional explanation—such as specifically identifying what in the VA's determination the ALJ found not to be credible and citing to evidence in the record that supports his conclusion—the Court is left to assume the ALJ arbitrarily assigned little weight to the VA's determination, in contravention of the Fourth Circuit's rulings. *See Woods*, 888 F.3d at 694 (noting "meaningful review cannot

rest on such guesswork”). Accordingly, upon remand the ALJ is instructed to afford Plaintiff's VA disability rating substantial weight or to “provide ‘persuasive, specific and valid reasons’ for giving less weight . . . that are supported by the record.” *Mims*, 2017 WL 3704615, at *8.

***B. Any error in the ALJ's determination that Plaintiff's vertigo, carpal tunnel syndrome, and intercostal neuralgia were “non-severe impairments” was harmless.***

While remand is warranted on this first issue, Plaintiff raised an additional issue in his motion. “Because these issues may recur on remand, we address them now.” *Woods*, 888 F.3d at 694 (citing *Bird*, 699 F.3d at 342–43).

Plaintiff argues that the ALJ erred in his determination that Plaintiff's vertigo, carpal tunnel syndrome, and intercostal neuralgia were “non-severe impairments” as the “medical evidence clearly establishes that these impairments are more than slight abnormalities that have no more . . . than a minimal effect on the ability to do basic work.” Pl.'s Mem. 10. Commissioner counters that the ALJ's decision finding these symptoms to be “non-severe impairments” was supported by sufficient evidence in the record and “distinctly articulated” in his analysis. Comm'r's Mem. 7–9.

At step two of the sequential evaluation, the claimant must demonstrate that he has an impairment or combination of impairments that is “severe.” 20 C.F.R. § 404.1520(a)(4)(ii), (c) (2012); *Bowers v. Colvin*, 628 F. App'x 169, 171 (4th Cir. 2015) (stating “the claimant bears the burden of production and proof to show that he suffers from a severe medically determinable impairment”). “An impairment or combination thereof is ‘severe’ if it significantly limits the claimant's ability to perform basic work activities.”[3] *Re v. Berryhill*, Civ. A. No. ADC-16-3990,

[3] Examples of “basic work activities” are “walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.” SSR

2017 WL 6729291, at *4 (D. Md. Dec. 28, 2017) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). Therefore, this step is not "satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). "[W]hen assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone." SSR 85-28, 1985 WL 56856, at *3.

An ALJ's failure to make a determination on the severity of an impairment or combination of impairments that is supported by evidence in the record may be reversible error. *See Chapman*, 2011 WL 1135866, at *5 (remanding a case where the court found the ALJ failed to properly apply the law "[b]ecause there [was] undisputed evidence of record, including medical evidence, that [the plaintiff] had cataracts and her cataracts impacted her ability to see, [and the ALJ] should have made a finding regarding the severity of this impairment"). However, an ALJ's failure to characterize a claimant's condition as severe at step two of the sequential evaluation process does not always warrant remand, even when erroneous. Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) (2012). If the ALJ finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the

---

85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985); *see, e.g.*, *Chapman v. Astrue*, No. PWG-10-304, 2011 WL 1135866, at *5 (D. Md. Mar. 24, 2011) (citing 20 C.F.R. § 404.1520(a)(4)(ii) (noting "undisputed evidence of record, including medical evidence, that [the plaintiff] had cataracts and her cataracts impacted her ability to see").

other steps. *Id.* However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC. *See* 20 C.F.R. § 404.1523 (2010); SSR 96-8p, 1996 WL 374184, at * 5. "If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Rivera v. Astrue*, Civ. A. No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013) (citation omitted); *see also Thomas v. Comm'r. Soc. Sec. Admin.*, Civ. No. SAG-11-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where the ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); *Spitzbarth v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2934, 2018 WL 4705784, at *10 (D. Md. Sept. 28, 2018) (holding an ALJ's failure to find a low IQ score to be a severe impairment was "harmless error" where the ALJ explained her reasoning for finding it to be a "non-severe impairment" and still proceeded to discuss and consider the low IQ at steps three and four of her analysis).

In this case, the ALJ determined at step two that Plaintiff had "severe" impairments of "history of cerebral meningionma, obesity and obstructive sleep apnea." R. 19. The ALJ also found several medically determinable impairments that he deemed were "'non-severe' within the meaning of the Regulations, as they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations." *Id.* Among these were vertigo, intercostal neuralgia, and right carpal tunnel syndrome. *Id.* For each of these impairments, the ALJ offered explanations supported by evidence in the record.

Vertigo[4]

The ALJ's discussion concerning Plaintiff's vertigo noted that, although the condition was listed "under 'past medical history' section of medical records, [Plaintiff] was not receiving any treatment nor was he on any medication" until after 2016. *Id.* The ALJ cited to the fact that subsequent neurological exams that were "unremarkable" and various test results were "normal." *Id.* The ALJ concluded that Plaintiff's vertigo was non-severe as it "caused no more than a minimal effect on [Plaintiff's] ability to perform work activities." *Id.* With this explanation, the ALJ fulfilled his responsibility to consider this impairment, assess its severity, and support his determination with evidence in the record. *See Chapman*, 2011 WL 1135866, at *5. However, the ALJ went even further and specifically "considered [Plaintiff's] non-severe impairment of vertigo" when addressing Plaintiff's RFC. R. 25. The ALJ went on to state that he "accommodated [Plaintiff's] history of a brain tumor and reported effects, including vertigo, by limiting [Plaintiff] to no climbing of ladders, ropes, or scaffolds." *Id.* Accordingly, any error the ALJ may have committed at step two concerning his assessment of the severity of Plaintiff's vertigo was not prejudicial as the ALJ discussed it in subsequent steps and accommodated for it in his RFC assessment. *See Rivera*, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013) (finding any error in failing to classify a plaintiff's depression as severe at step two to be harmless where "the ALJ specifically mentioned [the plaintiff's] depression in the RFC formulation and included several specific mental limitations"). Therefore, remand is not warranted on this issue.

[4] Vertigo is "[a] sensation of spinning or whirling motion" or "[i]mpercisely used as a general term to describe dizziness." *Stedman's Medical Dictionary*, available on Westlaw at STEDMANS 983680 (updated Nov. 2014).

Intercostal Neuralgia[5]

In assessing Plaintiff's intercostal neuralgia, the ALJ noted that Plaintiff received effective treatment and that he acknowledged this treatment gave him "typically . . . about six months-worth of relief." R. 19. The ALJ went on to state that Plaintiff's intercostal neuralgia was "non-severe because [it did] not significantly limit [Plaintiff's] ability to do basic work activities and [had] not met the twelve-month duration requirement." *Id.* Therefore, the ALJ met his requirement to consider this impairment, assess its severity, and support his determination with evidence in the record. *See Chapman*, 2011 WL 1135866, at *5. Although he did not find Plaintiff's intercostal neuralgia to be a severe impairment, in step three the ALJ went on to affirm that he "considered all of [Plaintiff's] impairments individually and in combination." R. 21. During his RFC assessment, the ALJ also stated that he considered "the limitations and restrictions imposed by the combined effects of all [of Plaintiff's] medically determinable impairments." R. 23. Accordingly, any error the ALJ may have committed at step two concerning assessing the severity of Plaintiff's intercostal neuralgia was not prejudicial as the ALJ discussed it in subsequent steps. *Brooks v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-3745, 2018 WL 4922347, at *6 (D. Md. Oct. 10, 2018) (finding an ALJ's affirmation that he had assessed "all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [plaintiff's] medically determinable impairments" sufficient to show the ALJ had considered non-severe impairments at later stages in the sequential evaluation process). Therefore, remand is not warranted on this issue.

---

[5] Intercostal Neuralgia is "pain in the chest wall due to neuralgia of one or more of the intercostal nerves." *Id.* at STEDMANS 599340. "Neuralgia" is "[p]ain of a severe, throbbing, or stabbing character in the course or distribution of a nerve." *Id.* at STEDMANS 599220. "Intercostal" is defined as "[b]etween the ribs." *Id.* at STEDMANS 450160.

Carpal Tunnel Syndrome[6]

In discussing Plaintiff's carpal tunnel syndrome, the ALJ cited evidence that showed Plaintiff received treatment in the form of injections that were not only effective in giving him "six months of relief," they had "given him more than six months of benefit as well." R. 19 (internal citations omitted). The ALJ went on to state that Plaintiff's carpal tunnel syndrome was "non-severe because [it does] not significantly limit [Plaintiff's] ability to do basic work activities and [has] not met the twelve-month duration requirement." *Id.* Although he did not find Plaintiff's carpal tunnel syndrome to be a severe impairment, the ALJ went on to affirm at step three that he "considered all of [Plaintiff's] impairments individually and in combination." R. 21. The ALJ also stated during his RFC assessment that he considered "the limitations and restrictions imposed by the combined effects of all [of Plaintiff's] medically determinable impairments." R. 23. Accordingly, any error the ALJ may have committed at step two concerning the severity of Plaintiff's carpal tunnel syndrome was not prejudicial as the ALJ discussed it in subsequent steps. *See Brooks*, 2018 WL 4922347, at *6. Therefore, remand is not warranted on this issue.

Finally, while the ALJ determined several of these impairments were non-severe, as previously stated the ALJ found other impairments were severe. R. 19. As a result, the ALJ continued to the next step in the sequential evaluation process. Accordingly, any error in the ALJ's determination that these three impairments were non-severe was harmless as Plaintiff's

[6] Carpal Tunnel Syndrome is "the most common nerve entrapment syndrome, characterized by paresthesias, typically nocturnal, and sometimes sensory loss and wasting in the median nerve distribution in the hand; often bilateral and affects women more than men; due to chronic entrapment of the median nerve at the wrist within the carpal tunnel." *Id.* at STEDMANS 877830. "Paresthesia" is "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking); may be due to lesions of both the central and peripheral nervous systems." *Id.* at STEDMANS 653800.

claim was not denied at step two. *See Payton v. Colvin,* Civ. No. JKS 13-2034, 2014 WL 4182339, at *3 (D. Md. Aug. 20, 2014) (noting that because "the evaluation of all of the claimant's impairments—including those labeled both severe and non-severe—continues in steps three through five based on the finding of any severe impairment at step two" a claimant is not prejudiced by a failure to find one impairment to be severe at step two "so long as the ALJ finds at least one severe impairment"); *see also Mondragon v. Astrue*, 364 Fed. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [the plaintiff's] favor with regard to other ailments."); *Tuan Ahn Du v. Astrue*, 475 Fed. App'x 127, 128 (9th Cir. 2012) ("[The plaintiff's] argument that the ALJ did not properly consider the combined effect of his impairments fails as to the step two analysis because that step was resolved in [the plaintiff's] favor."). Therefore, remand is not warranted on this issue.

## IV. Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing opinion. In making this decision, the Court offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.

June 7, 2019

/s/
Charles B. Day
United States Magistrate Judge

CBD/clc